SOUTH PORTO RICO SUGAR COMPANY, Petitioner, *v.* SUGAR BOARD OF PUERTO RICO, Respondent.

No. 28. Decided September 7, 1961.

---

[3] See *Blanes* v. *González,* 60 P.R.R. 553.

*James R. Beverley, R. Castro Fernández,* and *Francisco Castro Amy* for petitioner. *Alejandro Romanace* for respondent.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, and Mr. Justice Serrano Geyls and Mr. Justice Rigau.

PER CURIAM.

This is another appeal concerning the shipment and marketing expenses in the sugar industry. Sections 7 and 8 of the Sugar Act, 5 L.P.R.A. §§ 376, 377. In *Central Monserrate, Inc.* v. *Sugar Board, ante,* p. 105, we discussed at length the principles and rules governing this situation. We have very little to add to that already expressed therein.

Petitioner challenges the Board's decision refusing the items of storage expenses and taxes on sugar in stock after December 31, 1953, and reducing the brokerage commissions to a sum not greater than ¼ of 1 per cent of the sales.

■ *Storage expenses.* We understand that the arguments used in the *Central Monserrate* case concerning the storage of sugar are wholly applicable to the case at bar and that the legal reasons and practices of the industry explained therein support the Board's decision on storage after December 31.

■ *Property taxes.* Act No. 123 of July 1, 1953, retroactive to January 1, 1952 (Sess. Laws, p. 484, 5 L.P.R.A. § 409) provides that:

"The provisions of any other Act to the contrary notwithstanding, sugar produced in Puerto Rico in excess of the annual marketing quotas appertaining to producers and growers, as the case may be, as fixed by the Secretary of Agriculture of the United States in the exercise of the authority vested in him under Act No. 388 of the Eightieth Congress of the United States of America, known as the Sugar Act of 1948, as subsequently amended, is hereby exempted from the payment of property taxes."

In the light of this Act and the public policy stated in its statement of motives, it is evident that the Board can not permit the central to charge the colonos as "shipment and marketing expenses" (even supposing that it could be so considered) any amount whatsoever as a tax from which the colonos are exempt. The central should find the remedies in the system of taxation.

■ *Reduction in the item of brokerage expenses.* Petitioner claimed a commission of ⅜ of 1 per cent for this expense, and the Board, after admitting extensive evidence on the matter, granted ¼ of 1 per cent. We have examined that evidence and it sustains the administrative action. We find that the standards established by the Board are entirely reasonable. They are the following:

"If as in this case the Central negotiates the sale of sugar without giving participation to the colono in the transaction, it must be extremely careful that the expenses to be incurred be reasonable and ordinary within the concept of the term shipment and marketing and not to attempt to deduct from the shares to which a colono has a right in the sugar such expenses as financing transactions or other services which are not services, properly speaking, of shipment and marketing. If the Board were to permit unreasonable expenses incurred by the Central

for the shipment and sale of its sugar, it would be actually reducing the minimum share to which the colono has a right in the sugar produced, thus violating the true significance and purpose of the insular sugar act in force.

" .     .     .     .     .     .     .     .

"Thus, to charge the central a commission in this type of business ceases to be a charge that may be classified as a brokerage commission on the sale of the central's sugar and becomes a business for venture.

" .     .     .     .     .     .     .     .

" . . . The Central, thus, should seek in the market, on equal conditions, the brokerage service for which the most reasonable rate of commission is paid.  If it chooses a service which is more expensive, than that prevalent, the additional cost should not be charged to the colono, and if it pays a higher rate because it receives other services which are not marketing services, it is unfair to the colono to be charged for that service in the light of the policy that the minimum shares of the colonos in the sugar produced are established by law and should not be reduced by permitting the centrals to deduct unreasonable expenses for services that the central gives the colono pursuant to law."

■ The foregoing standards are entitled to "great weight and respect." *Colonos of Santa Juana, Inc.* v. *Sugar Board,* 77 P.R.R. 371 (1954) ; *South Porto Rico Sugar Co.* v. *Sugar Board,* 82 P.R.R. 814 (1961).

The record proves that the central paid as "brokerage expenses", for services that were not of "shipment and marketing," mainly among them, for advanced payments from its agents.

In view of the foregoing, the decision rendered by the Sugar Board of Puerto Rico in the above-entitled case on January 23, 1957, will be affirmed, with costs and expenses to the petitioner, in accordance with § 33 (5 L.P.R.A. § 402) of the Sugar Act.